39 F.3d 1187
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Meheret Fanta HAILU, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70683.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 5, 1994.*
Decided Oct. 26, 1994.
 
 Before: LAY,** TROTT and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 Meheret Fanta Hailu, a native and citizen of Ethiopia, filed a petition for asylum under 8 U.S.C. Sec. 1158(a) and for withholding of deportation under 8 U.S.C. Sec. 1253(h). His petition was denied by an immigration judge (IJ). The Board of Immigration Appeals (BIA) denied his appeal. On appeal, he claims the BIA erred in adopting the IJ's decision rather than writing a detailed report of its own conclusions from the record. More substantively, Hailu also claims there was not substantial evidence to support the denial of his claim for asylum. The BIA had jurisdiction to review the IJ's decision under 8 C.F.R. Sec. 3.1(b)(2). This court has jurisdiction to review the BIA's decision under 8 U.S.C. Sec. 1105a(a).
 
 
 3
 Hailu came to the U.S. in 1987 under a six month visa and failed to depart at its expiration. When deportation proceedings were initiated, Hailu applied for asylum under section 208 of the Immigration and Nationality Act, 8 U.S.C. Sec. 101(a)(42), and for withholding of deportation under section 243(h) of the Act, 8 U.S.C. Sec. 1253(h). Hailu testified at his 1989 hearing that he feared prison, torture, and possibly death on his return to Ethiopia. The IJ found that Hailu had not previously been persecuted in Ethiopia and reasoned that he had no basis to expect he would be persecuted on his return.
 
 
 4
 Hailu testified that he was born in a region called Gondar in the northern part of Ethiopia. Thereafter, he lived in Addis Ababa in the central part of the country. Much of the Gondar region was then held by forces hostile to the government and fighting was common. Several of Hailu's relatives were civilian casualties of the fighting. Hailu submitted reports by Amnesty International and others indicating serious and widespread human rights violations by the government. Government officials held and questioned Hailu for eight hours in 1984 regarding the guerilla movement. In 1987 when he was attempting to leave Ethiopia, Hailu testified he was detained for forty-eight hours before authorities accepted a bribe from him and permitted him to leave. Hailu testified that he feared persecution because he had been absent from Ethiopia longer than his visa authorized and the government would consequently believe he had been helping to raise funds for opposition groups. Because Hailu was permitted to leave the country several times, including when he left for the U.S., and because he worked for a government-owned airline, the IJ found the government held no grave suspicions about him. The IJ found no evidence to indicate Hailu had been persecuted or mistreated in Ethiopia.
 
 
 5
 The IJ found Hailu not to be credible. The IJ found Hailu solicited the letters he presented and doubted they were factual. Because one of Hailu's correspondents sent letters to Hailu at both his old and new addresses, the IJ found, contrary to Hailu's testimony, that Hailu had been in contact with the writer. He stated he gave away most of his belongings to others before he left. Later he said that he learned from a friend's letter that the government had confiscated his property. The IJ denied Hailu's applications and ordered his deportation.[1]
 
 Discussion
 
 6
 Hailu initially asserts on this appeal that the Board's conclusory opinions constitute an abuse of discretion. Saldana v. I.N.S., 762 F.2d 824, 827-28 (9th Cir.1985), modified, 785 F.2d 650 (9th Cir.1986); Zavala-Bonilla v. I.N.S., 730 F.2d 562, 568 (9th Cir.1985). In Saldana, however, the BIA had before it significant information which had not been presented to the IJ. In Zavala-Bonilla, the BIA issued an opinion affirming the IJ's decision. This court found the BIA reached factually incorrect conclusions, failed to consider all relevant factors, and did not satisfactorily detail its reasoning.
 
 
 7
 Hailu claims Castillo-Villagra v. I.N.S., 972 F.2d 1017, 1022-23 (9th Cir.1992), holds that a meaningful review of the BIA decision is impossible if it merely adopts the IJ's decision. The INS argues, and we agree, that in Castillo-Villagra, the BIA engaged in new fact finding, substituting its judgment for the IJ's, and the holding of the case is limited to such situations. The BIA also resolved the case on the basis of information not available to the IJ, taking administrative notice of certain facts. Id.
 
 
 8
 In this case, the BIA did not receive new information. To require its opinion to repeat at length the IJ's reasoning would be pointless. Where the BIA fully adopts the reasoning and decision of the IJ, no new information is presented to the BIA, and no new claim or argument advanced, this court can meaningfully review the BIA's decision by reviewing the IJ's decision.
 
 
 9
 The Attorney General may grant asylum to Hailu if he proves he is a "refugee" as defined by section 208(a) of the Immigration and Nationality Act, 8 U.S.C. Sec. 1158(a). To receive asylum, Hailu must show either past persecution or a well-founded fear of future persecution in his own country because of his race, religion, political opinion, membership in a particular social group or organization, or because of nationality. Immigration and Nationality Act, Sec. 101(a)(42)(A), 8 U.S.C. Sec. 1101(a)(42)(A). The BIA's determination that Hailu was not eligible for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. Sec. 1105a(a)(4).
 
 
 10
 Entitlement to withholding of deportation under section 243(h) of the Act requires meeting a more stringent standard. The person must establish a clear probability of persecution because of his race, religion, nationality, membership in a particular social group, or political opinion. I.N.S. v. Stevic, 467 U.S. 407, 413 (1984).
 
 
 11
 In I.N.S. v. Elias-Zacarias, 112 S.Ct. 812, 816-17 (1992), the Court held a person alleging persecution must present direct or circumstantial evidence of the persecutor's motive. In Canas-Segovia v. I.N.S., 970 F.2d 599, 601 (9th Cir.1992), this court held that imputed political opinion remained a valid basis for relief after Elias-Zacarias.
 
 
 12
 Hailu has not been active in opposing the government nor has he made anti-government statements. Hailu claims, however, the government will wrongly believe that because he is from the Gondar region, because of his previous detentions, and because several of his relatives have been killed by government forces, he holds political opinions hostile to the regime. The government's beliefs about him are also evidenced by the confiscation of his property. He believes these facts establish both a "reasonable possibility" and a "clear probability" that he would be persecuted were he to return to Ethiopia.
 
 
 13
 The INS answers that because Hailu has not been politically active, he must show he has "engaged in 'sufficiently conscious and deliberate' decisions or acts which attributed certain political opinions to [him], or else identify a 'specific effort aimed at [him] in particular based on [his] political ... beliefs.' " De Valle v. I.N.S., 901 F.2d 787, 791 (9th Cir.1990) (citations omitted). This, the INS claims, Hailu has not done. After Hailu's first interrogation, the government permitted him to continue in government employment and to leave the country on occasion. After Hailu's second interrogation, he was also allowed to leave the country. These detentions were in any case too minor to constitute persecution or indicate any likelihood of future persecution. As to the confiscation of his property, he lived in a government-owned apartment and did not return to it after his exit visa expired. Making an abandoned apartment available to new tenants is not persecution. Nor can Hailu's failure to return home after the expiration of his visa constitute an act of deliberate political significance. Kaveh-Haghigy v. I.N.S., 783 F.2d 1321, 1323 (9th Cir.1986). The civil strife in Gondar presents nonpersecutory reasons for any suspicions authorities might have about someone from that area.
 
 
 14
 We find the record as a whole presents substantial evidence for the factual findings which support the BIA's order denying asylum and ordering deportation. We therefore sustain the findings that Hailu had not been persecuted in the past and that it was neither reasonable to expect, nor clearly likely, that he would be persecuted in the future were he deported to Ethiopia.
 
 
 15
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Hon. Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On appeal to the Board, it was noted Hailu "made no specific allegations of error" and did not refute the IJ's conclusion that Hailu had solicited the letters he had submitted for the sole purpose of establishing his claim of persecution. The BIA adopted the IJ's decision and reasoning and affirmed his order